## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| **S. ROBERTS,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Case No.** |
| | § | |
| **WELLPATH RECOVERY** | § | |
| **SOLUTIONS, LLC** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **Defendant.** | § | |
| _____ | / | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**COMES NOW,** Plaintiff, **S. ROBERTS,** through her undersigned attorney, and files this Complaint against Defendant, **WELLPATH RECOVERY SOLUTIONS, LLC,** and states:

## INTRODUCTION

1.      Plaintiff demands a jury trial in this case as to any and all issues triable to a jury.

2.      Plaintiff files this Complaint about race and sex discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e (Title VII) as amended, race discrimination under 42 U.S.C. §1981, retaliation based on sex discrimination under Title VII, retaliation based on race discrimination under 42 U.S.C. §1981, retaliatory hostile work environment under 42 U.S.C. §2000e, and Family Medical Leave Act, 29 U.S.C. §2601.

3.      This action seeks compensatory and punitive damages, plus lost wages (past, present and future), attorneys fees, taxable court costs, pre-judgment and post judgment interest and any further relief the Court deems just and proper.

1

## PARTIES

4.     Plaintiff, S. Roberts is a resident of Miami Gardens, Florida.

5.     Defendant, Wellpath Recovery Solutions, LLC is a Florida Limited Liability Company registered to do business in Florida.  Defendant may be served with process by mail or in person on its registered agent, Corporate Creations Network, Inc., 801 US Highway 1, North Palm Beach, Florida 33408 in accordance with Fed. R. Civ. P. 4.

## JURISDICTION AND VENUE

6.     Venue is appropriate in the United States District Court for the Southern District of Florida, because Plaintiff lives in Miami Dade County, Florida and worked for the Defendant at their Broward County, Florida location, a substantial part of the events or omissions that gave rise to the claims in the Complaint happened in Broward County, Florida and the Defendants conducted business in Florida, as required under 28 U.S.C §1391.

7.     The Court has original jurisdiction of this action, *inter alia*, pursuant to 28 U.S.C. §1331 (federal question jurisdiction), under 42 U.S.C. §2000e, 42 U.S.C. §1981 and 29 U.S.C. §2601.

8.     The unlawful employment practices were committed within the jurisdiction of this Court.

## PROCEDURAL PREREQUISITES

9.     All conditions precedent to the filing of this action have been met by Plaintiff.  Plaintiff began her employment for the defendant in 2014 and was fired in 2021.

10.     Defendant has had over 15 employees throughout the entirety of Plaintiff's employment with Defendant and at all relevant times hereto.

11.     On September 28, 2021, Plaintiff filed her charge of discrimination with the Miami District Office of the Equal Employment Opportunity Commission ("EEOC"), complaint # 510-2021-07001.

12.     On November 8, 2022, Plaintiff received a Notice of Right to Sue from the EEOC.

13.     This lawsuit has been filed within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue letter from the EEOC.

## FACTS

14.     S. Roberts ("Plaintiff" or "Ms. Roberts") is an African-American female.

15.     Ms. Roberts was hired by the Defendant, Wellpath Recovery Solutions, LLC (formerly known as Geo Care, LLC and Correct Care, LLC a/k/a Correct Care Solutions, LLC) (hereafter, "Defendant"), on September 29, 2014, as a full time Mental Health Technician and worked out of the South Florida State Hospital.

16.     Ms. Roberts was promoted on March 15, 2015, to the position of Security Officer.  Thereafter, Ms. Roberts was promoted on January 17, 2016, to the position of Shift Supervisor, Captain.

17.     During the time she served as Captain, Ms. Roberts was the only female Captain employed by the Defendant at the South Florida State Hospital location.

18.     Beginning in January 2016, Ms. Roberts was assigned as Shift Supervisor, Captain to the first shift.  Ms. Roberts accepted this position based on an understanding and agreement with the Defendant that she would be allowed to work and remain on the first shift only, which allowed Ms. Roberts the time to care for her elderly mother who suffered from Alzheimer's Disease and Diabetes.

19.     Robert Lowe (hereafter, "Lowe"), who is a white male, was the Director of Security for Defendant and was Ms. Roberts' direct supervisor.

20.     A number of issues were immediately manifest regarding how Lowe treated Ms. Roberts and women in general.  Lowe displayed overt favoritism towards men, particularly white men, and treated most women, such as Ms. Roberts (black), poorly.

21.     Ms. Roberts spoke often to Human Resources and the Defendant's Hospital Administrator, Lee Packer about Lowe's poor treatment and the hostile work environment of Race and Sex discrimination that she experienced as a result.  Lee Packer advised Ms. Roberts that Lowe had problems with women who challenged him.  As an example, Ms. Roberts observed Lowe discipline another female officer, Officer Sheppard, after she came to work late.  However, when Officer Sheppard challenged Lowe and compared her negative treatment to the otherwise favorable treatment he gave to other Officers, Lowe made it a point to personally discipline Officer Sheppard rather than follow the usual procedure and delegate the discipline to another supervisor.

22.     As a result of how Lowe treated her, Ms. Roberts made numerous verbal complaints to Human Resources and the Hospital Administrator of Race and Sex discrimination. Ms. Roberts also had to file a complaint against Lowe about how he changed the settings in Kronos to prevent Captains who were largely African American, from seeing the time entries and the identity of the person who made them in order to prevent them from seeing changes Lowe made on behalf of preferred employees. This complaint resulted in an investigation against Lowe which resulted in continued retaliation and discrimination.

23.     Lowe attempted to change Ms. Roberts' schedule in order to accommodate a white male employee.  Relief Captain Grundeis did not like working nights, late hours, or second shift.  Lowe attempted to swap Mr. Grundeis' shift with Ms. Robert's first shift without first

informing or advising Ms. Roberts.   As a Relief Captain, Mr. Grundeis was responsible for filling in when a permanent Captain, such as Ms. Roberts, was absent.  Ms. Roberts informed Lowe of her arrangement with the Defendant where she was promised to remain on first shift, but he refused to change his mind. Ms. Roberts attempted to accommodate the shift change by suggesting some minor alternatives that would allow for the shift change but would not defeat her scheduling concerns.  Lowe refused to consider any of Ms. Roberts' suggestions.  Ms. Roberts had to file a grievance with the Human Resources director who attempted unsuccessfully to reason with Lowe. Ms. Roberts next went to the Local Regional Office which agreed with Ms. Roberts and forced Lowe to change the schedule back to the way it had originally been.

24.     Then in March of 2020 during Covid, Lowe again attempted to change Ms. Roberts' shift as well as the days that she worked and move the white man, Captain Grundeis, into the first shift.  Ms. Roberts advised Lowe that he was not permitted to change her shift and asked him to reverse his decision.   Lowe refused.  Ms. Roberts was forced to file a second grievance with Human Resources and the Hospital Administrator who were unsuccessful getting Lowe to adjust Ms. Roberts' schedule just as before.  Ms. Roberts then reported the incident to the Defendant's Chief Executive Officer, Jorge Dominicis who referred her to the Local Regional Office.  The Local Regional Office once again agreed with Ms. Roberts, forcing Lowe to keep her on first shift.

25.     As a result of Ms. Roberts' complaints and grievances of discrimination and hostile work environment, Lowe continued to retaliate against Ms. Roberts.  In addition to the two attempts to change Ms. Lowe's shift, Lowe assigned employees to the first shift that were not physically capable of handling the physical requirements of that shift.  Since the first shift was a daytime shift, the job tasks required individuals who possessed physical strength.  Lowe removed

the stronger people from the first shift and deliberately assigned people who did not have the physical strength needed in order to make Ms. Roberts' job harder as Captain of the first shift and potentially induce her to fail.

26.     On a phone interview of a potential officer candidate, both Lowe and Ms. Roberts were interviewing the candidate using what was supposed to be the same list of questions. When Lowe asked a question that was not on Ms. Roberts' list, she mentioned that she did not have the question and probably had the wrong paperwork.  Then, with the candidate listening in, Lowe told Ms. Roberts that she always had the wrong paperwork.  Not only was Ms. Roberts humiliated, but the candidate reacted negatively to the statement.

27.     Lowe frequently returned paperwork to Ms. Roberts for missing signatures and other information.  However, Lowe often gave her improperly completed paperwork that belonged to other Captains, particularly Captain Grundeis.

28.     On one occasion, Ms. Roberts had been accused of using profanity against a nurse.  Lowe took the initiative in that situation and walked the complaint himself down to Human Resources in order to get immediate disciplinary action. After an investigation, a witness revealed that Ms. Roberts never said what she had been accused of saying.  This is in stark contrast to incidents involving Captain Grundeis who liked to use substantial amounts of profanity.  Captain Grundeis used profanity in interactions with nurses, a psychologist, and a receptionist.  On those occasions, Lowe made certain that no action would be taken against Captain Grundeis and did not take any initiative to get the complaint to Human Resources, because Grundeis is a white male.

29.     Lowe retaliated against Ms. Roberts in her annual reviews.    From 2015 through 2018, Ms. Roberts had very positive annual reviews consistently being rated as commendable.  However, beginning in 2019, Lowe issued negative comments and gave her a

lower rating of competent (2019) and needs improvement (2020) on her annual reviews.  Ms. Roberts again spoke to the Human Resources department who told Lowe that he could not make negative remarks and reviews unless he had evidence to back them up.  Nevertheless, Lowe continued to write unsubstantiated negative comments on Ms. Roberts' annual reviews.

30.     Lowe's allies also retaliated against Ms. Roberts.  In or around June 2020, another Officer intentionally bumped into Ms. Roberts and then later bragged to another Officer that she did so intentionally.  Ms. Roberts filed a complaint against that Officer, but the Defendant failed to take any official action to address the issue.

31.     Lowe retaliated against Ms. Roberts by fabricating allegations against her. Ms. Roberts was informed by Officer Cook that Lowe had requested Officer Cook to sign a pre-prepared statement purporting to be from Officer Cook which contained an allegation that Officer Cook had witnessed Ms. Roberts tell another officer, Officer Holmes that he (Officer Holmes) was dead to her (Ms. Roberts).  Nevertheless, Officer Cook refused to sign the statement since it was false and informed Ms. Roberts that Lowe was looking to get her fired.

32.     As part of her duties as Captain, Ms. Roberts was responsible for the assigned Quarterly Life Safety Standards Fire Drills that are required per ACHA and Joint Commission Standards.   Fire drills were required to be conducted on a quarterly basis.  In 2019, although Ms. Roberts performed the required number of fire drills, and in fact completed more than the minimum number of drills, Lowe caused her to receive a Final Written Warning because the drills Ms. Roberts conducted did not meet a new and arbitrary format created by Lowe.  The Final Written Warning carried with it a one-year probationary period which expired in November 2020.

33.     On March 25, 2021, Lowe successfully fabricated a narrative that he used as a pretext for Ms. Roberts' termination.

34.     Ms. Roberts had a vacation scheduled to begin in March 2021 and as a result she knew that she would not be able to get all of the required fire drills completed by the March 31, 2021 deadline.  Ms. Roberts had completed approximately ten of fifteen drills but still owed five more.  Ms. Roberts notified Lowe and tried to meet with him several times in the days before her vacation was scheduled to start.  On the last day before the vacation, Lowe met with Ms. Roberts at which time Lowe assured her that he would get the fire drills completed.  Lowe requested the documentation showing the drills that had already been completed which Ms. Roberts provided.  The Acting Captain, relief Captain or Acting Officer, in this case Captain Grundeis, who would be in charge of the first shift while Ms. Roberts was on vacation was responsible to ensure that the fire drills were completed and properly documented.

35.     When Ms. Roberts returned from her vacation, Lowe told Ms. Roberts that some of the documentation was missing for fire drills that were completed and instructed her to recreate the documents.  Recreating documents that memorialized past events, where the original document was missing was a common practice of the Defendant, especially when the missing document previously existed and described a past event that had already occurred.   To assist Ms. Roberts in recreating those documents, Lowe provided Ms. Roberts with certain dates to put on the documents which were supposed to accurately reflect the actual dates the fire drills had been conducted while she was on vacation.

36.     Ms. Roberts followed Lowe's exact instructions utilizing the dates he had provided her, information available to her and from Nursing staff that were on site on those days.

Ms. Roberts did not know it then, but she later learned that no fire drills had been conducted on the dates provided to her by Lowe.

37.     A similar problem had occurred in December 2020 when Ms. Roberts was out of work for a couple of months due to having Covid and the passing of her mother.  While she was out of work, an Acting Captain/Relief Captain was responsible for managing her shift including conducting any fire drills that needed to be completed for the quarter.  However, upon Ms. Roberts' return to work, she discovered that the Acting/Relief Captain had not conducted any fire drills leaving them incomplete.  Ms. Robert had to scramble and hurry to complete the fire drills in a timely fashion.

38.     On April 29, 2021, Ms. Roberts applied for leave under the Family Medical Leave Act, ("FMLA") due to a serious health condition that included mental distress, physical stress and high blood pressure caused by various actions being taken by Lowe.    The process typically involved a phone call from the employee requesting leave to ADP, the vendor who was charged to process FMLA requests.  ADP then would send out the written application and other required paperwork within a week.  The requesting employee was then required to complete the application and submit all requested documents by the deadline.  The Defendant's practice, however, was to treat any phone request for FMLA as the official start date of the leave and would then obtain the required paperwork while the employee was on leave.  The Defendant also would accept paperwork that was submitted late without negatively affecting the FMLA leave.

39.     Not only did Ms. Roberts file the request for FMLA, she still had additional time prior to the expiration of the original deadline to submit her paperwork to successfully process her FMLA claim.  However, Ms. Roberts was terminated on May 12, 2021 while the application was still pending.

40.     The Defendant allegedly based its termination of Ms. Roberts on its representation that after reviewing the statements, control room logs, service card record, event code report and security camera footage to verify the validity of fire drills conducted on February 6, 2021, February 7, 2021, February 8, 2021 and March 10, 2021, it was determined that there was no supporting documentation to confirm the fire drills were conducted on those dates.  This is notwithstanding the fact that these dates were provided to Ms. Roberts by Lowe as being the dates that the fire drills were performed, in her absence, in order to supplement the record and prepare accurate reports.  Defendant also improperly cited to a one-year final written warning regarding fire drills since that final written warning had expired in November 2020, and could no longer be used as a basis for termination.

41.     The Defendant and Lowe, accepted actual falsified documents from other employees.  When the fire control system went down, the nurses were responsible for fire watch which they recorded by adding their initials on a report evidencing that they in fact completed their "watch."  Two nurses refused to participate in the fire watch and had not performed the tasks required of them.  Ms. Roberts issued a report to the Hospital Administrator describing these nurses' refusals to participate in the fire watch.  At a meeting attended by Lowe, the Hospital Administrator wanted the nurses written up.  However, the following day, the nurses produced a report to Ms. Roberts containing their initials which falsely reflected that they had participated in the fire watch.  Ms. Roberts turned the reports over to Lowe who accepted them without question.  No further administrative or disciplinary action was taken against these nurses.

42.     Plaintiff as a black female was a member of a protected class.

43.     At all relevant times hereto, Plaintiff was qualified to do her job and was meeting the legitimate job expectations of the Defendant.

10

44.     Plaintiff engaged in a protected activity when she filed discrimination complaints, requested investigations, and otherwise reported Lowe to Human Resources, to the Chief Executive Officer and the Local Regional Office concerning his hostile and retaliatory conduct towards Ms. Roberts and the improper shift changes.

45.     Plaintiff states that other employees who were not black and/or female were treated better than she.

46.     As a result of the foregoing, Plaintiff suffered from a hostile work environment and was the victim of an adverse employment action when she was unjustifiably terminated.

## COUNT I: RACE DISCRIMINATION UNDER 42 U.S.C.§2000e, *et. seq.*

47.     Plaintiff realleges, restates and adopts and incorporates herein Paragraphs 1 through 46 above as if fully set forth hereinafter.

48.     Title VII prohibits employers from discriminating against employees based on their race.

49.     Defendant, by and through its agents and employees, engaged in the aforementioned practices, policies, customs, and usages made unlawful by 42 U.S.C. § 2000e, *et seq*.

50.     Plaintiff was subjected to a hostile work environment because of her race.

51.     Had Plaintiff not been a black female, she would not have been discriminated against and terminated.

52.     As a direct and proximate result of Defendant's conduct that violated 42 U.S.C. §2000e, et.seq., Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages, including lost wages, emotional distress, pain and suffering, and

attorneys' fees and costs.  The wrongs done by the Defendant were aggravated by its willfulness, wantonness, and maliciousness for which the law allows the imposition of exemplary damages. Plaintiff, therefore, seeks exemplary damages in a sum to be determined by the trier of fact to serve as punishment to deter Defendant from such conduct in similar situations.

53.     Defendant's actions as stated above, and the resulting damages to Plaintiff, have necessitated that Plaintiff retain the services of COANE AND ASSOCIATES, PLLC, to represent her in these proceedings. Wherefore, Plaintiff seeks recovery of reasonable and necessary attorney's fees.

## COUNT II: SEX DISCRIMINATION UNDER 42 U.S.C.§2000e, *et. seq.*

54.     Plaintiff realleges, restates and adopts and incorporates herein Paragraphs 1 through 46 above as if fully set forth hereinafter.

55.     Title VII prohibits employers from discriminating against employees based on their sex.

56.     Defendant, by and through its agents and employees, engaged in the aforementioned practices, policies, customs, and usages made unlawful by 42 U.S.C. § 2000e, *et seq*.

57.     Plaintiff was subjected to a hostile work environment because of her sex.

58.     Had Plaintiff not been a black female, she would not have been discriminated against and terminated.

59.     As a direct and proximate result of Defendant's conduct that violated 42 U.S.C. §2000e, et.seq., Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages, including lost wages, emotional distress, pain and suffering, and attorneys' fees and costs.  The wrongs done by the Defendant were aggravated by its willfulness,

wantonness, and maliciousness for which the law allows the imposition of exemplary damages. Plaintiff, therefore, seeks exemplary damages in a sum to be determined by the trier of fact to serve as punishment to deter Defendant from such conduct in similar situations.

60. Defendant's actions as stated above, and the resulting damages to Plaintiff, have necessitated that Plaintiff retain the services of COANE AND ASSOCIATES, PLLC, to represent her in these proceedings. Wherefore, Plaintiff seeks recovery of reasonable and necessary attorney's fees.

## COUNT III: RACE DISCRIMINATION UNDER 42 U.S.C.§1981

61. Plaintiff realleges, restates and adopts and incorporates herein Paragraphs 1 through 46 above as if fully set forth hereinafter.

62. 42 U.S.C §1981 prohibits employers from discriminating against employees based on their race.

63. Title 42 U.S.C. §1981, *inter alia*, protects at-will employees from employment discrimination on the basis of race because at-will employment is a form of contract for purposes of section 1981. *Spriggs v. Diamond Auto Glass*, 165 F.3d 1015 (4th Cir. 1999). Defendant offered to pay Plaintiff for her work, and Plaintiff accepted that offer and began performing the work. Thus, the parties entered into a contractual arrangement covered by 42 U.S.C.§1981.

64. Defendant, by and through its agents and employees, engaged in the aforementioned practices, policies, customs, and usages made unlawful by 42 U.S.C. §1981.

65. Defendant discriminated against Plaintiff by firing her based on her race for being Black.

66.     Had Plaintiff not been Black, she would not have been forced to endure Defendant's discriminatory conduct and would not have been terminated.

67.     As a direct and proximate result of the Defendant's conduct that violated 42 U.S.C. §1981, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages, including lost wages, emotional distress, pain and suffering and attorneys' fees and costs.

68.     Defendant's actions were intentional, willful, harsh, oppressive, reckless, and malicious, and as a further and proximate cause, Plaintiff has suffered severe emotional distress, pain, and suffering. The wrongs done by the Defendant were aggravated by its willfulness, wantonness, and maliciousness for which the law allows the imposition of exemplary damages. Plaintiff, therefore, seeks exemplary damages in a sum to be determined by the trier of fact to serve as punishment to deter Defendant from such conduct in similar situations.

69.     Defendant's actions as stated above, and the resulting damages to Plaintiff, have necessitated that Plaintiff retain the services of COANE AND ASSOCIATES, PLLC, .to represent her in these proceedings. Wherefore, Plaintiff seeks recovery of reasonable and necessary attorneys' fees.

## COUNT IV: RETALIATION FOR COMPLAINTS OF RACE DISCRIMINATION UNDER 42 U.S.C.§2000e, *et. seq.*

70.     Plaintiff realleges, restates and adopts and incorporates herein Paragraphs 1 through 46 above as if fully set forth hereinafter.

71.     Title VII prohibits employers from retaliating against employees for complaining about discrimination based on their race.

72.     Defendants, by and through their agents and employees, engaged in the aforementioned practices, policies, customs and usages made unlawful by 42 U.S.C. § 2000e, *et seq.*

73.     Defendant retaliated and discriminated against Plaintiff by firing her for her complaints about Defendant's discrimination based on Plaintiff's race and sex.

74.     Had Plaintiff not been Black or female and had not complained about race and sex discrimination, she would not have been terminated.

75.     As a direct and proximate result of the Defendant conduct that violated 42 U.S.C. § 2000e, *et seq.*  Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages, including lost wages, emotional distress, pain and suffering and attorneys' fees and costs.

76.     Defendant's actions were intentional, willful, harsh, oppressive, reckless, and malicious, and as a further and proximate cause, Plaintiff has suffered severe emotional distress, pain, and suffering. The wrongs done by the Defendant were aggravated by its willfulness, wantonness, and maliciousness for which the law allows the imposition of exemplary damages. Plaintiff, therefore, seeks exemplary damages in a sum to be determined by the trier of fact to serve as punishment to deter Defendant from such conduct in similar situations.

77.     Defendant's actions as stated above, and the resulting damages to Plaintiff, have necessitated that Plaintiff retain the services of COANE AND ASSOCIATES, PLLC, .to represent her in these proceedings. Wherefore, Plaintiff seeks recovery of reasonable and necessary attorney's fees.

## COUNT V: RETALIATION FOR COMPLAINTS OF SEX DISCRIMINATION UNDER 42 U.S.C.§2000e, *et. seq.*

15

78.    Plaintiff realleges, restates and adopts and incorporates herein Paragraphs 1 through 46 above as if fully set forth hereinafter.

79.    Title VII prohibits employers from retaliating against employees for complaining about discrimination based on their sex.

80.    Defendants, by and through their agents and employees, engaged in the aforementioned practices, policies, customs and usages made unlawful by 42 U.S.C. § 2000e, *et seq.*

81.    Defendant retaliated and discriminated against Plaintiff by firing her for her complaints about Defendant's discrimination based on Plaintiff's sex.

82.    Had Plaintiff not been a woman or complained about sex discrimination, she would not have been terminated.

83.    As a direct and proximate result of the Defendant conduct that violated 42 U.S.C. § 2000e, *et seq.*  Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages, including lost wages, emotional distress, pain and suffering and attorneys' fees and costs.

84.    Defendant's actions were intentional, willful, harsh, oppressive, reckless, and malicious, and as a further and proximate cause, Plaintiff has suffered severe emotional distress, pain, and suffering. The wrongs done by the Defendant were aggravated by its willfulness, wantonness, and maliciousness for which the law allows the imposition of exemplary damages. Plaintiff, therefore, seeks exemplary damages in a sum to be determined by the trier of fact to serve as punishment to deter Defendant from such conduct in similar situations.

85.    Defendant's actions as stated above, and the resulting damages to Plaintiff, have necessitated that Plaintiff retain the services of COANE AND ASSOCIATES, PLLC, .to

represent her in these proceedings. Wherefore, Plaintiff seeks recovery of reasonable and necessary attorneys' fees.

## COUNT VI: RETALIATION FOR COMPLAINTS OF RACE DISCRIMINATION UNDER 42 U.S.C. §1981

86.     Plaintiff realleges, restates and adopts and incorporates herein Paragraphs 1 through 46 above as if fully set forth hereinafter.

87.     42 U.S.C §1981 prohibits employers from discriminating against employees based on their race.

88.     Title §42 U.S.C. §1981, *inter alia*, protects at-will employees from employment discrimination on the basis of race because at-will employment is a form of contract for purposes of section 1981. *Spriggs v. Diamond Auto Glass*, 165 F.3d 1015 (4th Cir. 1999). Defendant offered to pay Plaintiff for her work, and Plaintiff accepted that offer and began performing the work. Thus, the parties entered into a contractual arrangement covered by 42 U.S.C.§1981.

89.     Defendant, by and through its agents and employees, engaged in the aforementioned practices, policies, customs, and usages made unlawful by 42 U.S.C. §1981.

90.     Defendant retaliated and discriminated against Plaintiff by firing her for her complaints about Defendant's discrimination directed towards her based on Plaintiff's race.

91.     Had Plaintiff not been Black or complained about race discrimination, she would not have been terminated.

92.     As a direct and proximate result of the Defendant conduct that violated 42 U.S.C. §1981.  Plaintiff has suffered and continues to suffer harm for which she is entitled to an

17

award of damages, including lost wages, emotional distress, pain and suffering and attorneys' fees and costs.

93.     Defendant's actions were intentional, willful, harsh, oppressive, reckless, and malicious, and as a further and proximate cause, Plaintiff has suffered severe emotional distress, pain, and suffering. The wrongs done by the Defendant were aggravated by its willfulness, wantonness, and maliciousness for which the law allows the imposition of exemplary damages. Plaintiff, therefore, seeks exemplary damages in a sum to be determined by the trier of fact to serve as punishment to deter Defendant from such conduct in similar situations.

94.     Defendant's actions as stated above, and the resulting damages to Plaintiff, have necessitated that Plaintiff retain the services of COANE AND ASSOCIATES, PLLC, .to represent her in these proceedings. Wherefore, Plaintiff seeks recovery of reasonable and necessary attorneys' fees.

## COUNT VII: RETALIATORY HOSTILE WORK ENVIRONMENT FOR COMPLAINTS OF RACE DISCRIMINATION UNDER 42 U.S.C.§2000e, *et. seq.*

95.     Plaintiff realleges, restates and adopts and incorporates herein Paragraphs 1 through 46 above as if fully set forth hereinafter.

96.     Defendant, by and through its agents and employees, engaged in the aforementioned practices, policies, customs, and usages made unlawful by 42 U.S.C. §2000e, *et. seq*.

97.     Based on Plaintiff's informal and formal complaints, challenges to Lowe's attempts to change shifts to accommodate other male employees, challenges to the favoritism Lowe showed to other employees, and other conduct as described above, Defendant's and its agents and employees' animus and retaliatory acts against Plaintiff, altered the conditions of her

employment because she was wrongfully subjected to unsubstantiated poor work evaluations and negative comments from her supervisor, the lack of proper support from backup Acting Captains or Officers in her vacation absence, repeated attempts at improper shift changes, as well as other forms of intentional and pervasive humiliation and harassment from her superiors (such as when Officer Wright intentionally shoved the Plaintiff, or when Officer Cook was requested by Lowe to sign a false statement that alleged that Plaintiff had told another officer he was dead to her because the other officer was dating Officer Wright's daughter, and was ultimately terminated.

98.     Defendant was made aware of this severe and pervasive harassment and conduct.

99.     As a direct and proximate result of Defendant's conduct that violated 42 U.S.C. §2000e *et. seq*., Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages, including lost wages, emotional distress, pain and suffering, and attorneys' fees and costs.

100.    Defendant's actions were intentional, willful, harsh, oppressive, reckless, and malicious, and as a further and proximate cause, Plaintiff has suffered severe emotional distress, pain, and suffering. The wrongs done by the Defendant were aggravated by its willfulness, wantonness, and maliciousness for which the law allows the imposition of exemplary damages. Plaintiff, therefore, seeks exemplary damages in a sum to be determined by the trier of fact to serve as punishment to deter Defendant from such conduct in similar situations.

101.    Defendant's actions as stated above, and the resulting damages to Plaintiff, have necessitated that Plaintiff retain the services of COANE AND ASSOCIATES, PLLC, .to represent her in these proceedings. Wherefore, Plaintiff seeks recovery of reasonable and necessary attorneys' fees.

## COUNT VII: FAMILY AND MEDICAL LEAVE ACT VIOLATION

102.    Plaintiff realleges, restates and adopts and incorporates herein Paragraphs 1 through 46 above as if fully set forth hereinafter.

103.    At all times relevant hereto, Plaintiff was an "eligible employee" within the meaning of the Family Medical Leave Act, 29 U.S.C. §2601 ("FMLA").  At all times relevant hereto, Defendant was a "covered employer" within the meaning of the FMLA.

104.    The FMLA provides employees with the right to take unpaid leave for a serious health condition (see paragraph 38, supra) that makes the employee unable to perform the functions of the job and be reinstated to the same or an equivalent position after taking protected leave.

105.    The Defendant violated the FMLA by unlawfully interfering with, restraining, or denying the exercise of Plaintiff's rights by, inter alia, terminating her employment during the time that her FMLA application was pending, an action that would clearly deter employees from exercising rights under the FMLA.

106.    As a direct and proximate result of Defendant's unlawful conduct in violation of the FMLA, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages. including lost wages, emotional distress, pain and suffering, and attorneys' fees and costs.

107.    Defendant's actions were intentional, willful, harsh, oppressive, reckless, and malicious, and as a further and proximate cause, Plaintiff has suffered severe emotional distress, pain, and suffering. The wrongs done by the Defendant were aggravated by its willfulness, wantonness, and maliciousness for which the law allows the imposition of exemplary damages.

Plaintiff, therefore, seeks exemplary damages in a sum to be determined by the trier of fact to serve as punishment to deter Defendant from such conduct in similar situations.

108.    Defendant's actions as stated above, and the resulting damages to Plaintiff, have necessitated that Plaintiff retain the services of COANE AND ASSOCIATES, PLLC, .to represent her in these proceedings. Wherefore, Plaintiff seeks recovery of reasonable and necessary attorneys' fees.

## **JURY TRIAL DEMANDED**

Plaintiff restates her demand for a trial by jury for all issues so triable.

*This space intentionally left blank*

**WHEREFORE,** Plaintiff requests compensatory damages, including but not limited to emotional distress; Back Pay, Pre-Judgment Interest on Back Pay, Front Pay, Lost Benefits, Punitive Damages, Post-judgement Interest, reasonable attorney's fees and costs under 42 U.S.C. §1981, 42 U.S.C. §2000e, *et al*, and 29 U.S.C. §2601, to be proven at time of trial and any other relief that this Court finds reasonable under the circumstances.

Respectfully submitted,

**COANE AND ASSOCIATES, PLLC**
By: */s/ Arthur Mandel*
**Arthur Mandel**
Florida Bar No. 22753
Email: Arthur.mandel@coane.com
**Adam Levine**
Florida Bar No. 100102
Email: adam.levine@coane.com
COANE AND ASSOCIATES, PLLC
1250 East Hallandale Beach Blvd,
Ste 303
Hallandale Beach, FL 33009
Telephone: (305) 538-6800
Facsimile: (713) 850-8528

*ATTORNEYS FOR PLAINTIFF*